## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Sue Song on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>Nationstar Mortgage Holdings Inc.<br><br>          Defendants.<br><br>_____ | **CASE NO: 2:16-cv-0006**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Sue Song (formerly Soo Song) individually and on behalf of all others similarly situated brings this action against Defendant Nationstar Mortgage Holdings Inc. (hereinafter "Nationstar,") and alleges, based on personal knowledge, investigation, and information and belief, as follows:

## I.   NATURE OF ACTION

1.   Plaintiff Sue Song brings this putative class action against Nationstar in connection with its unlawful conduct in failing to terminate private mortgage insurance ("PMI") in accordance with the requirements of her mortgage.

2.    Specifically, Plaintiff's mortgage documents included a "Mortgage Insurance Disclosure" form which promised to automatically terminate the Plaintiff's PMI on the "earlier of: 1. the first day of the first month after the midpoint date of the loan's amortization period; or 2. the date when the principal balance of your loan reaches 78% of the original value of the property." *See* Exhibit A.  The Defendant breached this promise.

II.      **PARTIES**

3.      Plaintiff Sue Song is, and at all times relevant hereto was, an individual residing in Montgomery County, Pennsylvania.

4.      Defendant Nationstar Mortgage Holdings Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. Nationstar does business in Pennsylvania and throughout the United States.

5.      Nationstar is one of the largest mortgage servicers in the United States with a servicing portfolio of $400 billion and more than 2.4 million customers.

III.     **JURISDICTION AND VENUE**

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action in which members of the Class of Plaintiffs are citizens of a State different from the Defendants.

7.      This Court also has jurisdiction under 28 U.S.C. §§1331 and 1337.

8.      Defendant has sufficient minimum contacts with Pennsylvania or otherwise intentionally avails itself of the consumer markets within Pennsylvania through the mortgage services it provided in Pennsylvania, to render the exercise of jurisdiction by the Pennsylvania courts permissible under traditional notions of fair play and substantial justice.

9.      Defendant transacts business within this judicial district, and the business activity described herein is carried out, in part, in this district.  Plaintiff Song and numerous Class Members reside in this district, the action concerns real estate located in this district, and Plaintiff Song and numerous Class Members were harmed in this district.  Venue is therefore appropriate under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

IV.   <u>FACTUAL ALLEGATIONS</u>

10.   Historically, mortgage lenders viewed an 80% loan-to-value (LTV) ratio as an acceptable standard for making a consumer real estate loan.  In other words, a 20% down payment was seen as a prudent requirement to ensure that the lender had sufficient equity in the property in the event the borrower defaulted on the loan.

11.   However, as housing prices increased, many prospective buyers were unable to meet the 20% down payment threshold.  Lenders charge PMI to decrease the lenders' risk when the consumer's down payment is less than 20%.  In essence, PMI covers the difference between the amount a borrower can afford to pay as a down payment and the standard 20% down payment.  Accordingly, once the consumer's loan falls within the 80% LTV ratio, PMI is no longer necessary.

12.   PMI policies typically require the borrower to pay monthly premiums, which are generally added to a borrower's monthly mortgage payment.

13.   Plaintiff Sue Song has a residential mortgage loan on her primary residence that is presently serviced by Nationstar.

14.   Plaintiff originally obtained the loan in September, 2010 from Bank of America.  The value used for the home for purposes of the mortgage was $343,200.00.

15.   The amount of the original loan amount was $308,000.00.  The original Loan To Value ratio was 89.74%, which means the Plaintiff paid approximately 10% as a down payment on the home.

16.   Because the LTV ratio for the mortgage was below 80%, Plaintiff was required to pay for PMI.

17.   Pursuant to Plaintiff's PMI agreement, she was required to make a monthly payment of $174.20.  This payment was added to Plaintiff's monthly mortgage payment.

18.     At the time the loan was made, Plaintiff received a PMI disclosure from Bank of America.  *See* Exhibit A.   The disclosure informed that the Plaintiff that PMI would automatically terminate if the Plaintiff was current on her payments on the earlier of: 1. the first day of the first month after the midpoint date of the loan's amortization period; or 2. the date when the principal balance of your loan reaches 78% of the original value of the property.  *See* Exhibit A

19.     On or around February 15, 2013, Nationstar purchased Plaintiff's loan from Bank of America.

20.     Plaintiff's loan was never modified and Plaintiff has always been current and in good standing on her mortgage payments.

21.     In or around September of 2014, Plaintiff's LTV fell to 78%.  In or around February of 2015, Plaintiff's LTV was at approximately 75%.

22.     However, Nationstar failed to automatically terminate Plaintiff's PMI coverage and continued to charge Plaintiff the monthly PMI fee of $174.20.

23.     At that time, Plaintiff contacted Nationstar requesting that her PMI coverage be terminated.  Nationstar refused this request.

24.     Instead of terminating Plaintiff's PMI on the termination date as promised in the PMI Disclosure form, Nationstar informed the Plaintiff that her property would need to be currently appraised, at her expense, before Nationstar would consider terminating her obligation to continue to pay for PMI coverage.

25.     To date, Nationstar has not terminated Plaintiff's PMI coverage and continues to charge the Plaintiff $174.20 per month.  Plaintiff has been required to continue paying PMI to Nationstar to avoid default on her loan.

26.     On information and belief, based on industry practice, Nationstar has a financial incentive to continue to charge the PMI fees on plaintiff's loan because it receives a portion of the premium and is covered for risk of default on the loan.

27.     On information and belief, Nationstar's conduct towards Plaintiff represents its pattern and practice with respect to termination of PMI coverage in Pennsylvania and nationwide.

28.     Plaintiff has been harmed by Nationstar's conduct in that she has been forced to continue making PMI payments.

## V.     CLASS ALLEGATIONS

### A.     Class Definition

29.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of herself and on behalf of a Nationwide Class of similarly situated persons defined below.  The relevant time period for the Class is 2013 to the present ("the Class Period").

30.     The proposed National Class consists of:

**All persons residing in the United States and its territories: (a) whose loans were serviced by Nationstar,  (b) who received a disclosure form promising to automatically terminate PMI on the date when the loan's principal balance reaches 78% of the original value of the property, (c) whose PMI was not terminated when the loan's principal balance reached 78 percent of the original value of the property, and (d) who were current on their loan, or if they were not current, their PMI was not terminated on the first day of the first month beginning after the date that they became current ("the Class").**

31.     Plaintiff also seeks to represent a Pennsylvania subclass that includes:

**All persons residing in the Commonwealth of Pennsylvania: (a) whose loans were serviced by Nationstar,  (b) who received a disclosure form promising to automatically terminate PMI on the date when the loan's principal balance  reaches 78% of the**

**original value of the property, (c) whose PMI was not terminated when the loan's principal balance reached 78 percent of the original value of the property, and (d) who were current on their loan, or if they were not current, their PMI was not terminated on the first day of the first month beginning after the date that they became current ("the Subclass").**

32.     Excluded from the National Class and the Pennsylvania Subclass are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns.  Also excluded from the Class and Subclass are any judge, justice or judicial officer presiding over this matter.

33.     Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

    **B.     Fed. R. Civ. P. 23(a) Factors**

34.     **Numerosity.**  The members of the Class and Subclass are so numerous that separate joinder of each member is impracticable.  Plaintiff does not know the exact number of members in the Class or Subclass, but based upon information and belief, Plaintiff reasonably believes that there are more than a sufficient number of class members to meet the minimum requirements.

35.     **Commonality.**  The claims of Plaintiff raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the Class and the Subclass. Plaintiff's claims arise from the same practice or course of conduct that gives rise to the claims of the Class and Subclass members.  The questions of law and fact common to Plaintiff and the Class and Subclass predominate over questions affecting only individual Class and Subclass members, and include, but are not limited to, the following:

      a.      What are Nationstar's policies and practices are with respect to PMI termination;

      b.      Whether Nationstar's policies and practices constitute a breach of contract

      c.      Whether Plaintiff, the Class and the Subclass have been injured as a result of Defendants' conduct; and

      d.      Whether Nationstar was unjustly enriched to the detriment of the Class, entitling Plaintiff and the Class to disgorgement of all monies resulting there from.

36.     **Typicality.**  The claims of Plaintiff are typical of the claims of each member of the Class and the Subclass.  Upon information and belief, Defendant engaged in a standardized course of conduct affecting the Class and Subclass Members, and Plaintiff's alleged injuries arise out of that conduct.  All Class and Subclass Members, including Plaintiff, have the same or similar injury (i.e. paying PMI premiums after the termination date) as a result of Defendant's conduct.

37.     **Adequacy.**  Plaintiff can fairly and adequately protect and represent the interests of each member of the Class and Subclass.  Plaintiff fits within the class definition and her interests do not conflict with the interests of the members of the Class or Subclass she seeks to represent.  Plaintiff is represented by experienced and able attorneys.  The undersigned Class Counsel have litigated numerous class actions and complex cases and intend to prosecute this action vigorously for the benefit of the entire Class and Subclass.  Plaintiff and Class Counsel can and will fairly and adequately protect the interests of all members of the Class and Subclass.

**C.**     **Fed. R. Civ. P. 23(b)(2) Factors**

38.     Defendant acted on grounds generally applicable to the entire Class and Subclass, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole and the Subclass.  The prosecution of separate actions by individual Class or Subclass Members would create the risk of inconsistent or varying

adjudications with respect to individual members of the Class and Subclass that would establish incompatible standards of conduct for Defendant.

39.     Injunctive relief is necessary to prevent further unlawful conduct by the Defendant.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to engage in unlawful conduct.

D.     **Fed. R. Civ. P. 23(b)(3) Factors**

40.     **Common issues predominate:** As set forth in detail above, common issues of fact and law predominate because all of Plaintiff's claims are based on identical conduct.

41.     **Superiority:** Additionally, a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The damages sought by each Class and Subclass Member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class and Subclass to effectively redress the wrongs done to them on an individual basis.  Even if the members of the Class and Subclass themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

42.     The trial and litigation of Plaintiff's claims are manageable.  Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

43.     Further, Defendant has acted on grounds generally applicable to the Class and Subclass, thereby making final injunctive relief with respect to the Class as a whole appropriate.  Moreover, on information and belief, Plaintiff alleges that the conduct complained of herein is

8

substantially likely to continue in the future if an injunction is not entered.

44.     **Notice to the Class:** Notice to the Class and Subclass may be made by publication.

## VI.     CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff, The Class and the Subclass)

45.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

46.     The PMI disclosure provided to the Plaintiff and the Class Members at the inception of their loans became part of their mortgage contracts.  *See* Ex. A.

47.     Nationstar failed to comply with these contracts by failing to terminate PMI in accordance with the disclosures.

48.     Plaintiff and members of the Class and Subclass have been injured by reason of Defendants' breach of contract.  The injury consists of the amount of insurance premiums the class members were required to pay after their LTV ratio dropped below 78%.

### COUNT II
### UNJUST ENRICHMENT
### (On Behalf Of Plaintiff, The Class And The Subclass)

49.     Plaintiff repeats and realleges the allegations set forth above, and incorporate the same as if set forth herein at length.

50.     Plaintiff brings this count on her own behalf and on behalf of all class members.

51.     Plaintiff and the Class have conferred upon Defendant an economic benefit, in the nature of profits resulting from unlawful collection of PMI premiums and Defendant's ability to continue to protect itself against perceived risk, to the economic detriment of the Plaintiff and the Class.

52.     The economic benefits Defendant received through unlawful collection of PMI premiums are a direct and proximate result of Defendant's unlawful practices.

53.     The financial benefits derived by Defendant rightfully belongs to Plaintiff and the Class, as Plaintiff and the Class paid PMI premiums that they were not required to pay, inuring to the benefit of the Defendant.

54.     It would be inequitable and violative of the law of the Commonwealth of Pennsylvania for the Defendant to be permitted to retain any of the overcharges for PMI premiums derived from Defendant's unlawful practices alleged in this Complaint.

55.     Defendant should be compelled to disgorge all unlawful or inequitable proceeds received by them.

56.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and on behalf of the members of the Class and Subclass defined herein, pray for judgment and relief on all Causes of Action as follows:

A.     An order certifying the proposed Nationwide Class and the Pennsylvania Subclass and appointing Plaintiff Sue Song and the undersigned counsel of record to represent each class;

B.     An order enjoining Defendant from pursuing the policies, acts, and practices complained of herein;

C.     Actual damages;

D.     For pre-judgment interest from the date of filing this suit;

E.     Reasonable attorneys' fees;

F.     Costs of this suit; and

G.     Such other and further relief as the Court may deem necessary or appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**GOLOMB & HONIK, P.C.**

_/s/ KJG2445_

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Tammi A. Markowitz, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email: rgolomb@golombhonik.com
        kgrunfeld@golombhonik.com
        tmarkowitz@golombhonik.com

_Attorneys for Plaintiff_

**DATED:   May 5, 2016**