IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUE SONG, on behalf of herself and all others similarly situated, | : : : | CIVIL ACTION |
| v. | : : | |
| NATIONSTAR MORTGAGE HOLDINGS INC. | : : | NO. 16-006 |

MEMORANDUM

Dalzell, J.                                                                                                    July 20, 2016

## I.     Introduction

We consider here defendant Nationstar Mortgage Holdings Inc.'s ("Nationstar") motion to dismiss plaintiff Sue Song's first amended complaint. Song, on behalf of herself and a putative class, brings claims for breach of contract and unjust enrichment against Nationstar for its allegedly unlawful failure to terminate her private mortgage insurance ("PMI") in accordance with her mortgage agreement. We have jurisdiction pursuant to 28 U.S.C. § 1332.

As explained in greater detail below, we will deny Nationstar's motion to dismiss because the Homeowners Protection Act, 12 U.S.C. § 4901 et seq. ("HPA"), does not preempt Song's breach of contract and unjust enrichment claims, and Song's first amended complaint contains sufficient factual matter, accepted as true, to state a facially plausible claim to relief against Nationstar.

## II.    Standard of Review

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6)

motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the first amended complaint.

**III.     Factual Background**

Nationstar currently services Song's residential mortgage on her primary residence in Montgomery County, Pennsylvania. First Am. Compl. ¶¶ 3, 13. Song originally obtained her loan in September of 2010 from Bank of America in the amount of $308,000.00 in order to purchase a home valued at $343,200.00. Id. at ¶¶ 14-15. The original loan-to-value ratio ("LTV") for Song's mortgage was 89.74%, reflecting that Song made a 10% down payment on the home. Id. at ¶¶ 14-15. Because the LTV ratio for the mortgage was above 80%, Song was required to pay for PMI. Id. at ¶ 16. PMI decreases a lender's risk when a borrower's down payment is less than 20% of the value of the home. Id. at ¶ 11. A PMI policy requires the borrower to pay monthly premiums until PMI is no longer necessary based on the LTV ratio. Id. at ¶¶ 11-12.

Pursuant to her PMI agreement, Song was required to make monthly payments of $174.20, and this payment was added to her monthly mortgage payment. Id. at ¶ 17. At the time Song took out her mortgage, she received a PMI disclosure from Bank of America that informed her that her PMI would automatically terminate if she was current on her payments at the earlier of: (1) the first day of the month after the midpoint date of the loan's amortization period, or (2) the date when the principal on the balance of her loan reached 78% of the original value of the property. Id. at ¶ 18.

In February of 2013, Nationstar purchased Song's mortgage from Bank of America. Id. at ¶ 19. Song's loan was never modified, and she has always been current on her mortgage payments. Id. at ¶ 20. In September of 2014, the LTV ratio on Song's loan fell to 78%, and by February of 2015, it had fallen to 75%. Id. at ¶ 21. Nationstar did not automatically terminate Song's PMI coverage and continued to charge her the monthly PMI fee of $174.20. Id. at ¶ 22. Song contacted Nationstar to request that her PMI coverage be terminated, but Nationstar

refused. Id. at ¶ 23. Instead, Nationstar informed Song that her property would need to be appraised, at her expense, before it would consider terminating her obligation to pay for PMI coverage. Id. at ¶ 24. Song continues to pay the PMI to avoid defaulting on her mortgage. Id. at ¶ 25. Song alleges that Nationstar has a financial incentive to continue to charge the PMI on her loan because it receives a portion of the premium and is covered for the risk of default. Id. at ¶ 26.

Song brings two claims against Nationstar. First, Song alleges breach of contract for failure to comply with the terms of the PMI disclosure. Id. at ¶¶ 45-48. Second, Song brings a claim for unjust enrichment. Id. at ¶¶ 49-56. Song also makes putative class action allegations not pertinent to resolving Nationstar's motion to dismiss. See id. at ¶¶ 29-44.

## IV.   Discussion

Nationstar moves to dismiss Song's first amended complaint by arguing that her claims are preempted by the HPA. Def.'s Mot. to Dismiss ("MTD") at 2, 4-7. Nationstar also argues that her breach of contract claim fails because there was no valid contractual obligation with respect to Song's PMI payments. Id. at 7. Nationstar further claims that Song's unjust enrichment claim should be dismissed because there is a valid and enforceable mortgage contract. Id. at 11. Song opposes the motion to dismiss in its entirety.

We consider the parties' arguments.

### A.   Whether The HPA Preempts Song's State Law Claims

Nationstar argues that Section 4908 of the HPA broadly preempts Song's state law claims. MTD at 4-5. Song responds that these claims are covered by the two exceptions to preemption set forth in the HPA for state laws that are not inconsistent with the HPA and for

private agreements to PMI termination dates prior to those required by the HPA. Pl.'s Resp. in Opp. at 7-8 (citing Sections 4908(a)(2) and 4910(b) of the HPA).

The HPA provides

> With respect to any residential mortgage or residential mortgage transaction consummated after [July 29, 1999], and except as provided in paragraph (2), the provisions of this chapter shall supersede any provisions of the law of any State relating to requirements for obtaining or maintaining private mortgage insurance in connection with residential mortgage transactions, cancellation or automatic termination of such private mortgage insurance, any disclosure of information addressed by this chapter, and any other matter specifically addressed by this chapter.

12 U.S.C. § 4908(a)(1). The exception in paragraph (2) provides, "The provisions of this chapter do not supersede protected State laws, except to the extent that the protected State laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency." 12 U.S.C. § 4908(a)(2)(A). Protected state laws are not considered inconsistent with the HPA if they require termination of PMI or other mortgage guaranty insurance at a date earlier than provided for in the HPA or when a mortgage principal balance is achieved that is higher than provided for in the HPA. 12 U.S.C. § 4908(a)(2)(B)(i). The HPA defines protected state laws as those state laws regarding requirements for PMI in connection with residential mortgage transactions enacted within a specific time frame. 12 U.S.C. § 4908(a)(2)(C).

Some district courts have found that the language in Section 4908(a)(1) providing that the HPA supersedes state laws "relating to" obtaining, maintaining, cancelling, or terminating PMI indicates Congress's expansive intent to preempt all state laws that have a connection with, or make reference to, requirements for cancelling PMI or disclosing information concerning PMI cancellation. See, e.g., Fried v. JPMorgan Chase & Co., No. 15-2512, 2016 WL 347314, *5 (D.N.J. Jan. 28, 2016) (Arleo, J.) (unreported). On that basis, district courts have dismissed as

preempted state law tort and quasi-contract claims and claims arising under state consumer protection statutes. Id. (citing cases). See, e.g., Gregor v. Aurora Bank FSB, 26 F. Supp. 3d 146, 154 (D.R.I. 2014) (finding that the HPA preempted plaintiffs' claims for fraudulent concealment and unjust enrichment because the claims would function as alternate enforcement mechanisms and frustrate Congressional intent to establish a uniform regulatory scheme); Augustson v. Bank of Am., N.A., 864 F. Supp. 2d 422, 437 (E.D.N.C. 2012) (finding that plaintiffs' fraud and negligent misrepresentation claims were related to the disclosure of information addressed by the HPA and therefore fell within the core of the HPA's preemption clause).

Other courts, noting that the phrase "relating to," if given its most expansive definition, could run afoul of the presumption against preemption of state law in fields traditionally subject to state regulation, have instead found that permitting common law fraud claims to proceed would not confound Congress's intent when it passed the HPA -- namely, the creation and enforcement of a uniform set of regulations governing the disclosure of PMI. Scott v. GMAC Mortg., LLC, No. 10-0024, 2010 WL 3340518, *4-5 (W.D. Va. Aug. 25, 2010) (Moon, J.) (unreported) (finding that fraud claims of general application not relating directly to the HPA's disclosure requirements fell outside the preemptive scope of the HPA). See also Dwoskin v. Bank of Am., N.A., 850 F. Supp. 2d 557, 568 (D. Md. 2012) (explaining that fraud and negligent misrepresentation claims were not preempted by the HPA because the duties not to lie or misrepresent were separate from those duties imposed by the HPA's specific requirements).

Notwithstanding the HPA's broad preemption clause, the HPA provides:

> Nothing in this chapter shall be construed to preclude cancellation or termination, by agreement between a mortgagor and the holder of the mortgage, of a requirement for private mortgage insurance in connection with a residential mortgage transaction before the cancellation or termination date established by this chapter for the mortgage.

12 U.S.C § 4910(b).

At least one district court has found that the HPA does not preempt breach of contract claims when they are predicated on a loan servicer's "self-imposed undertakings under the [m]ortgage" and not on any violation of a state-imposed obligation. Fellows v. CitiMortgage, Inc., 710 F. Supp. 2d 385, 403 (S.D.N.Y. 2010). In Fellows, the borrower claimed that the loan servicer had violated the PMI cancellation and disclosure requirements imposed by the Fannie Mae Servicing Guide, which the borrower alleged were incorporated into the mortgage contract. Id. at 404. The district court found that the HPA's savings clause in Section 4910(b) exempted from preemption private contracts permitting the cancellation of PMI earlier than allowed by the HPA. Id. Ultimately, the district court found that the borrower failed to state a claim for breach of contract because the Fannie Mae Servicing Guide upon which the borrower based his claim was not part of his mortgage contract. Id. at 404-05.

Although the scope of the HPA's preemption clause and its relationship to the savings clause in Section 4910(b) are not settled, we are persuaded by the reasoning in Fellows that breach of contract claims alleging that a loan servicer has not upheld its end of the bargain with respect to contractual provisions governing the cancellation or termination of PMI do not fall within the scope of the HPA's preemption provision and are covered by the savings clause in Section 4910(b). In this case, Song alleges that Nationstar has refused to honor her agreement with Bank of America regarding the cancellation and termination of her PMI. Accepting Song's factual allegations as true, her breach of contract claim is not preempted by the HPA. To the extent that Song's unjust enrichment claim, fairly read, is a pleading in the alternative in light of questions regarding the validity of her contract or agreement with Bank of America with respect to her PMI, that claim is also not preempted by the HPA.

**B.      Whether Song's Breach Of Contract Claim Fails As A Matter of Law**

Nationstar argues that Song's breach of contract claim should be dismissed because the disclosure upon which she bases her claim was never part of the mortgage contract at issue. MTD at 7. Song responds that promises made in disclosures regarding PMI are often considered part of the contracts that borrowers enter into with lenders. Pl.'s Resp. in Opp. at 11.

A cause of action for breach of contract requires pleading (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages. Meyer, Darragh, Buckler, Bebeneck & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., -- A.3d. --, 2016 WL 1627551, *9 (Pa. 2016).

Accepting the factual allegations of the first amended complaint as true, the disclosure that Song received from Bank of America and signed was a contract that Nationstar has breached by refusing to cancel or terminate her PMI, thereby causing her damages in the form of the monthly PMI payments that she believes she is no longer required to make, but has continued to remit to avoid defaulting on her mortgage. At the pleadings stage, that is enough to withstand a motion to dismiss. Without the benefit of discovery, it would be premature to delve into the issues of integration or inclusion by reference raised by Nationstar with respect to the mortgage contract itself.

**C.      Whether Song's Unjust Enrichment Claim Fails as a Matter of Law**

Finally, Nationstar argues that Song's unjust enrichment claim fails because (1) there exists a valid and enforceable mortgage contract, and (2) her allegation that Nationstar has been enriched is conclusory. MTD at 11-12. Song responds that she (1) is entitled to sue for unjust

8

enrichment in the alternative to breach of contract and (2) has sufficiently pled that Nationstar benefits from her monthly PMI payments. Pl.'s Resp. in Opp. at 13-14.

Under Pennsylvania law, unjust enrichment is an equitable doctrine providing a remedy when (1) one party confers a benefit on the recipient, (2) the recipient appreciates that benefit, and (3) the recipient accepts and retains the benefit under such circumstances that it would be inequitable or unjust for the recipient to retain the benefit without payment. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (summarizing 16 Summary of Pa. Jur. 2d Commercial Law § 2.2 (1994) (in turn citing cases)). A plaintiff must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensation. Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (citing Torchia on Behalf of Torchia v. Torchia, 499 A.2d 581, 582-83 (Pa. Super. Ct. 1985)). There can be no recovery for an unjust enrichment claim or under any other theory of quantum meruit if there is a written agreement or express contract between the parties. Id. See also AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, No. 10-6087, 2011 WL 3241356, *3 (E.D. Pa. July 29, 2011) (Jones II, J.) (unreported) (explaining that permission to plead alternative theories of recovery under both breach of contract and unjust enrichment turns on whether there is any question as to the validity of the contract).

At this early stage, in light of the question of the validity of the PMI disclosure with respect to its binding effect as a contract between Song and Bank of America -- and now Nationstar -- Song is permitted to plead unjust enrichment in the alternative to her breach of contract claim. Further, Song's factual averment that Nationstar has a financial incentive to continue to charge the PMI on her loan suffices to plead the requisite appreciation and retention

of a benefit for purposes of alleging an unjust enrichment claim. First Am. Compl. ¶ 26 (averment on information and belief regarding Nationstar's incentive to continue to charge for PMI); 5 Wright, Miller & Kane, Fed. Prac. & Proc. § 1224 (3d ed. 2015) (allegations in the form of pleading on information or belief are permissible post-Twombly and Iqbal).

## V.     Conclusion

We find that Song's claims are not preempted by the HPA and that her factual allegations suffice to plead plausible claims to relief for breach of contract and/or unjust enrichment, and we will therefore deny Nationstar's motion to dismiss. An appropriate Order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.